| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NORTH CAROLINA,<br><br>                Plaintiffs,<br><br>v.<br><br>THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY d/b/a CAROLINAS HEALTHCARE SYSTEM,<br><br>                Defendant. | **ANSWER FOR THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY D/B/A CAROLINAS HEALTHCARE SYSTEM** |

      The United States of America and the State of North Carolina attempt in this Complaint to rewrite agreements entered into between some of the largest health insurance companies in the country and the CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY ("the Hospital Authority"), claiming that these negotiated agreements - - and in particular the portions that prevent these insurance companies from changing the fundamental economic terms of these agreements after the fact - - were "imposed" on these companies by the Hospital Authority (which, by revenues, is approximately one-twentieth the size of these insurance companies) and operate as an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1. These provisions, however, are not unreasonable within the meaning of the antitrust laws; rather, where they exist, they serve to prevent these large insurance companies from negotiating complex pricing arrangements with the Hospital Authority based on an implied

promise to provide insureds, and then reneging on that promise by encouraging their insureds not to use the services of the Hospital Authority. In essence, these provisions prevent insurance companies from unilaterally undermining the economic expectations on which the Hospital Authority's pricing is based. Stripping such provisions from contracts would reduce, rather than enhance, the Hospital Authority's ability to discount its pricing.

## FIRST DEFENSE TO ALL CLAIMS FOR RELIEF

1. The Hospital Authority admits that it is a publicly-established and self-sustaining hospital authority established under North Carolina law which provides services to residents of the areas in which it operates and that it operates as a non-profit corporation with its principal place of business in Charlotte, North Carolina. The Hospital Authority further admits that its largest facility is the Carolinas Medical Center which provides certain services and care that are otherwise not available within the Charlotte area and that the Carolinas Medical Center is located in Charlotte. The Hospital Authority further admits that it operates nine other acute-care hospitals within the Charlotte area, as defined by the Complaint. Except as stated, the Hospital Authority denies the allegations of paragraph 1.

2. The Hospital Authority admits that, measured by range and quality of services, it strives to be the preeminent hospital system within the Charlotte area. The Hospital Authority further admits that it provides a significant share of the inpatient hospital services in the Charlotte area. The Hospital Authority further admits that Novant is a large multi-hospital system that operates in the Charlotte area, and that CaroMont Regional Medical Center also operates in the Charlotte area. The Hospital Authority denies any implication that these are the only inpatient hospitals or multi-hospital systems that operate within the Charlotte area. The Hospital Authority admits that its revenues are as set forth in **Exhibit 1**, and specifically that its

revenues from its operations in the Charlotte area from inpatient hospital services were substantially less than $3.3 Billion in 2014 and substantially less than $3.8 Billion in 2015.[1] The Hospital Authority further admits that Novant operates five inpatient hospitals in the Charlotte area and that its consolidated revenues, as set forth in **Exhibit 2**, were approximately $3.78 Billion in 2014, and that on information and belief, CaroMont Regional Medical Center is smaller than Novant as measured by revenues. The Hospital Authority adopts by reference and incorporates the contents of **Exhibit 1** and **Exhibit 2**. Except as stated, the Hospital Authority denies the allegations of this paragraph.

3. The Hospital Authority admits that it offers a comprehensive range of healthcare services and that it offers a range of healthcare services that exceeds the services offered by other hospitals or multi-hospital systems in the Charlotte area. Except as stated, the Hospital Authority denies the allegations of this paragraph.

4. The Hospital Authority admits that it negotiates reimbursement rates for its inpatient services that differ from insurance company to insurance company. The Hospital Authority is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegation concerning its "reputation" other than the Hospital Authority admits that it strives for excellence in providing a range of care and services otherwise unavailable to patients in the Charlotte area. The Hospital Authority further admits that, in a note to a 2013 PowerPoint presentation, it was said that "CHS has enjoyed years of annual reimbursement rates that are premium to the market, with those increase being applied to rates that are premium to the market." The Hospital Authority denies any implication that "premium" rates are

---

[1] In Exhibit 1, the revenues from tertiary and acute care services include revenue from both inpatient services, which constitutes the Plaintiffs' alleged product market, and outpatient services within the geographic market alleged by the Plaintiffs.

supracompetitive rates or that its reimbursement rates are a function of any alleged "market power" over the insurance companies. Except as stated, the Hospital Authority denies the allegations of this paragraph.

5. The Hospital Authority admits that as used by the Plaintiffs, the term "steering" loosely refers to attempts to encourage a health insurance member to seek care from an individual or set of providers, and that these attempts can vary widely depending on the circumstances. The Hospital Authority further admits that, as used by the Plaintiffs, "steering" can include a financial incentive. The Hospital Authority denies that, as used in the Complaint, "steering" is a "method" and that it necessarily reduces the healthcare expenses of health insurance members. Except as stated, the Hospital Authority denies the allegations of this paragraph.

6. The Hospital Authority denies the allegations of this paragraph except that the Hospital Authority admits that in 2013 a small number of senior administrators at the Hospital Authority identified a large number of risks and opportunities to the revenues at the Hospital Authority which are necessary for it to be self-sustaining, and that among these risks were regulatory changes, the decline of employer-based health insurance, changes in the tax laws, technological changes including telemedicine, the development of innovative bundled products, and efforts by insurance companies to attempt to encourage their insureds to use facilities other than those of the Hospital Authority.

7. The Hospital Authority denies the allegations set forth in this paragraph.

8. The Hospital Authority admits this paragraph sets forth the Plaintiffs' description of tiered networks. The Hospital Authority further admits that the Plaintiffs pose a hypothetical "example" that fails to take into account numerous additional health plan design variables from

the perspective of either the plan sponsor or the plan member. Except as stated, the Hospital Authority denies the allegations of this paragraph.

9. The Hospital Authority admits that it participates in narrow networks as defined by the Plaintiffs, that narrow networks exist in the Charlotte area in which it does not participate, and that narrow network products generally constrict health plan members' options by including fewer choices of providers historically in exchange for lower premiums. Except as stated, the Hospital Authority denies the allegations of this paragraph.

10. The Hospital Authority admits that it engages in extensive negotiations with insurance companies to offer a range of services and providers in exchange for negotiated prices, and the Hospital Authority expects to receive the benefit of its bargain. The Hospital Authority further admits that these negotiations, agreed-upon prices, and range of services and providers are reflected in its agreements with insurance companies. The Hospital Authority further admits that, because it has high fixed costs, generally a higher volume of patients and procedures allows it to spread its fixed costs. Additionally, the Hospital Authority admits that based upon these negotiations and historic rates of utilization and other factors, it reasonably anticipates the volume and type of patients that will utilize its services and that this is an important function for a self-sustaining public hospital system. The remainder of this paragraph consists of theoretical economic suppositions and not fact and thus no response is necessary. Except as specifically admitted, the Hospital Authority denies the allegations of this paragraph.

11. The Hospital Authority admits that it anticipates patient volume based on the scope of services offered, historic rates of utilization and other factors, and that it enters into agreements with insurance companies that seek to require that the insurance companies encourage their patients to use the Hospital Authority's services in exchange for a negotiated

reimbursement. To the extent that steering in paragraph 11 includes the Hospital Authority's participation in co-branded products with insurance companies, the Hospital Authority admits that it has gained patient volume from such participation and as such has realized additional revenue, in part attributable to expanding access to healthcare insurance to previously uninsured patients. Except as stated, the Hospital Authority denies the allegations of this paragraph.

12. The Hospital Authority denies that it forbids insurance companies from allowing the Hospital Authority's competitors to compete. The Hospital Authority does enter into binding agreements with insurance companies which provide that, in exchange for encouraging its customers to utilize the Hospital Authority's services, insurance companies will reimburse the Hospital Authority at a rate negotiated between them for services and care. The Hospital Authority denies that it has market power or uses this alleged market power to stop insurance companies from negotiating with or entering into binding agreements with any other hospital system. Except as stated, the Hospital Authority denies the allegations of this paragraph.

13. The Hospital Authority admits that in some of its negotiated agreements with insurance companies there are provisions that are designed to prevent the disclosure of competitively sensitive information, including pricing, to the Hospital Authority's competitors and that, on information and belief, the Hospital Authority's competitors have similar restrictions in their agreements with insurance companies. The Hospital Authority further admits that the insurance companies similarly seek and request that commercially sensitive information which relates to them is prohibited from disclosure. Except as stated, the Hospital Authority denies the allegations of this paragraph.

14. The Hospital Authority admits that there are narrow and tiered network products, including but not limited to Blue Value, Blue Select, and UnitedHealthcare Compass, that

exclude the Hospital Authority's Charlotte-area hospitals from network participation or place virtually all the Hospital Authority's Charlotte-area hospitals in a non-preferred tier, as set forth in **Exhibit 3**. The Hospital Authority adopts by reference and incorporates the contents of **Exhibit 3**. Except as stated, the Hospital Authority denies the allegations of the paragraph and, in particular, denies the allegation that its competitors do not actively, regularly, and intensely compete with it for patients on a range of matters including price, services, location, and quality.

15. The Hospital Authority admits on information and belief that the companies listed control the vast majority of the commercial insurance market and that the size and scope of these companies (three of which operate on a for-profit basis) is as set forth in the materials attached as **Exhibit 4** and that one of these companies, Blue Cross Blue Shield of North Carolina covers a substantial number of commercial lives in North Carolina and in the Charlotte area. The Hospital Authority adopts by reference and incorporates the contents of **Exhibit 4**. Except as stated, the Hospital Authority denies the allegations of this paragraph.

16. The Hospital Authority admits that there are a number of provisions in its agreements with these four insurance companies that deal with actions by these companies to change the economic assumptions of the agreement after the fact. The Hospital Authority denies that any of these provisions constitute an illegal restriction on steering in violation of Section 1 of the Sherman Act. The Hospital Authority further denies that there are prohibitions on steering with Blue Cross Blue Shield as set forth in the relevant portions of its agreement with Blue Cross Blue Shield attached as **Exhibit 5.** The Hospital Authority adopts by reference and incorporates the contents of **Exhibit 5.**[2] The Hospital Authority admits that as part of an arms-length

---

[2] Because **Exhibit 5** contains commercially sensitive information that is protected under federal and state law, and because it was produced to the Plaintiffs pursuant to the protections provided under the Antitrust Civil Process Act and was designated as "confidential," this agreement has

negotiation with one commercial insurance company, the company and the Hospital Authority agreed to the contract language quoted in this paragraph. The Hospital Authority further admits that the provisions of each of its agreements dealing with the economic obligations of the parties to those agreements differ from the others since each agreement was the result of a separate, arms-length negotiating process. The Hospital Authority further admits that each agreement contains language or provides the right to terminate the contract if either the Hospital Authority or the insurance company commits a material breach of the agreement. Except as stated, the Hospital Authority denies the allegations of this paragraph.

17. The allegations of paragraph 17 set forth a legal conclusion to which no response is necessary. Except as stated, the Hospital Authority denies the allegations of this paragraph 17.

18. The allegations of paragraph 18 set forth legal and economic theories to which no response is necessary. Except as stated, the Hospital Authority denies the allegations of this paragraph.

19. The Hospital Authority admits that inpatient hospital services consist of a broad group of medical, surgical, diagnostic and other treatment services - - whether or not they are actually utilized by any individual patient in any particular acute care inpatient visit - - that are made available to a patient and are included in a patient's hospital stay. The Hospital Authority admits that some inpatient services are not substitutes for others and that historically the insurance companies typically seek to negotiate all services together, except where they seek to exclude services, create bundled products, or other products that include less than the full range of services offered by a health system. Except as stated, the Hospital Authority denies the allegations of this paragraph.

---

been filed under seal pending a determination by the Court as to the confidentiality to be accorded the agreement prior to trial.

20. The Hospital Authority admits that for some acute inpatient hospital services, there are no reasonable substitutes; however, over time many forms of acute inpatient hospital services have been provided as outpatient services and thus substitutes are available or may become available depending on the particular service involved, the particular patient involved, and the state of medicine or surgery at any given point in time. For example, many forms of surgery and types of surgical procedures, as well as many forms and types of diagnostic procedures or medical procedures, which were previously provided on an acute inpatient basis are now typically provided on an outpatient basis, a trend that is expected to continue into the future and which indicates that substitution is not only possible but is occurring on a regular basis. Except as stated, the Hospital Authority denies the allegations of this paragraph.

21. The Hospital Authority is without knowledge or information sufficient to form a belief as to the population of the Charlotte Combined Statistical Area, as defined by the U.S. Office of Management and Budget. To the extent that the allegations of paragraph 21 state a legal conclusion, the Hospital Authority is not required to respond. Except as stated, the Hospital Authority denies the allegations of this paragraph.

22. The Hospital Authority is without knowledge or information sufficient to form a belief as to what all commercial insurers seek to do when enrolling insureds in a particular geographic area. In addition, the Hospital Authority is without knowledge or information sufficient to form a belief as to what Charlotte area consumers are willing or not willing to do when enrolling in an insurance plan or what their "strong preferences" may be across the Charlotte area as defined by the Plaintiffs. Except as stated, the Hospital Authority denies the allegations of this paragraph.

9

23. The Hospital Authority adopts by reference and incorporates its response to the allegations of paragraph 22 *supra*. The Hospital Authority is further without knowledge or information sufficient to form a belief as to what is "viable" or not "viable" for any particular insurance company or any consumer located throughout the Charlotte area as defined by the Plaintiffs. Allegations of what a "hypothetical monopolist provider" might or might not do are not allegations of fact and are rather theoretical supposition to which no response is necessary. Except as stated, the Hospital Authority denies the allegations of this paragraph.

24. The Hospital Authority admits that when it negotiates with insurers it typically negotiates the prices and terms for acute inpatient services, among other healthcare services such as outpatient, ancillary and physician services, including services located outside the Charlotte area. The Hospital Authority denies that an insurer operating in the Charlotte area "must have" the Hospital Authority as a participating provider in order to have a viable health insurance business; in fact, United Healthcare allowed its agreements with the Hospital Authority to expire, as set forth in the materials attached as **Exhibit 6**. The Hospital Authority adopts by reference and incorporates the contents of **Exhibit 6.** Except as stated, the Hospital Authority denies the allegations of this paragraph.

25. The Hospital Authority denies the allegations of this paragraph.

26. The Hospital Authority denies the allegations of this paragraph.

27. The Hospital Authority denies the allegations of this paragraph.

28. The Hospital Authority admits that Carol Lovin, its Chief Strategy Officer, testified during the course of a several hour deposition that she did not negotiate insurance agreements with the insurance companies, that she did not implement or design any negotiating strategies with the insurance companies, that she had never read the agreements with the

insurance companies because this was outside of her area of responsibility, and that she had no knowledge of the provisions of the insurance agreements, as set forth in the portions of her deposition attached as **Exhibit 7**. The Hospital Authority adopts by reference and incorporates the contents of **Exhibit 7**. Despite a complete lack of prior knowledge or responsibility for the negotiations or the agreements with the insurance companies, attorneys for the United States nonetheless insisted on seeking her personal opinion on matters for which she had no responsibility and she replied that the ability of others to offer networks should not be limited and that she "personally" did not object to removing restrictions in agreements that she had never read. The Hospital Authority objects to any implication that the personal opinion of a manager who has no responsibility for or participation in the negotiated agreements with insurance companies is or could be relevant to any issue in this matter. Except as stated, the Hospital Authority denies the allegations of this paragraph.

29. The Hospital Authority admits that this Court has subject matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. §4 and Section 16 of the Clayton Act, 15 U.S.C. §26 for the alleged claims of the State of North Carolina and the United States of America, as implemented by 28 U.S.C. §§1331, 1337(a) and 1345.

30. The Hospital Authority admits that this Court has personal jurisdiction over it as it does business and is headquartered in this Judicial District.

31. The Hospital Authority admits that venue is proper in this Court pursuant to 28 U.S.C. §1391 and Section 12 of the Clayton Act, 15 U.S.C. §22 and that it does business in this Judicial District and that the alleged claims of the Plaintiffs arise in this Judicial District.

32. The Hospital Authority admits that it engages in interstate commerce and provides healthcare services for which employers, insurers, and individual patients, remit payments across state lines.

33. The Hospital Authority adopts by reference and incorporates its responses to the allegations of paragraphs 1 through 32.

34. The Hospital Authority denies the allegations of this paragraph.

35. The Hospital Authority admits that it has and likely will continue to negotiate and enforce agreements with insurance companies in the Charlotte area as defined by the Complaint. Except as stated, the Hospital Authority denies the allegations of this paragraph.

36. The Hospital Authority denies the allegations of this paragraph and each subpart thereof.

37. The Hospital Authority admits that some types of new facilities and programs, and some expansions of existing facilities and programs, are subject to licensing requirements and, potentially, to the certificate-of-need laws of the State of North Carolina. Except as stated, the Hospital Authority denies the allegations of this paragraph.

38. The Hospital Authority denies the allegations of this paragraph.

39. The Hospital Authority denies the allegations of this paragraph.

40. The Hospital Authority denies the allegations of this paragraph and each subpart thereof.

## ADDITIONAL DEFENSES

Without assuming any burden of proof or persuasion that would otherwise rest with Plaintiffs, Defendant asserts the following defenses to the Complaint:

### Second Further Defense to All Claims for Relief

While denying there has been any injury to competition, in any event, Plaintiffs' claims are barred, in whole or in part, because the procompetitive effects of the Hospital Authority's contracts with insurance company payors outweigh any potential anticompetitive effects.

### Third Further Defense to All Claims for Relief

Plaintiffs fail to allege an injury in fact sufficient to create a case or controversy and should be dismissed pursuant to Rule 12 (b) (1) of the Federal Rules of Civil Procedure.

### Fourth Further Defense to All Claims for Relief

The Plaintiffs' claims are barred, in whole or in part, under the doctrine of unclean hands.

### Fifth Further Defense to All Claims for Relief

The Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of laches.

### Sixth Further Defense to All Claims for Relief

The Plaintiffs' claims are barred, in whole or in part, by the doctrine of equitable estoppel and/or as a result of waiver.

WHEREFORE, the Hospital Authority, further denies each allegation or assertion set forth in the Complaint to which there has been no specific answer, and having fully answered the Complaint, prays that:

1. The Plaintiffs have and recover nothing;

2. The costs of this action, including attorneys' fees as allowed by law, be taxed against the Plaintiffs;

3. The Plaintiffs' request for injunctive relief be denied; and

4. This Court order such further relief as it deems just and appropriate.

This the 8th day of August, 2016.

/s/ James P. Cooney
James P. Cooney III (N.C. Bar No. 12140)
Debbie W. Harden (N.C. Bar No. 10576)
Mark J. Horoschak (N.C. Bar No. 22816)
Brian Hayles (N.C. Bar No. 33971)
Michael Fischer (N.C. Bar No. 47029)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202
Telephone: (704) 331-4900
E-mail: jcooney@wcsr.com
E-mail: dharden@wcsr.com
E-mail: mhoroschak@wcsr.com
E-mail: bhayles@wcsr.com
E-mail: mfischer@wcsr.com

Hampton Dellinger (N.C. Bar No. 19903)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave., NW, Suite 800
Washington DC 20015
(202) 274-1152 (direct)
hdellinger@bsfllp.com

Richard A. Feinstein*
Nicholas A. Widnell*
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave., NW, Suite 800
Washington DC 20015
rfeinstein@bsfllp.com
nwidnell@bsfllp.com
(202) 895-5243 (Richard Feinstein – direct)
(202) 274-1153 (Nicholas Widnell – direct)

*Attorneys for Defendant The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Healthcare System*

*Subject to Pro Hac Vice Application

# CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 8th day of August, 2016, the foregoing **Answer** was served via the Court's CM/ECF system as follows:

Paul John Torzilli
United States Department of Justice
Antitrust Division
450 5th Street, NW
Washington, DC 20530
Paul.Torzilli@usdoj.gov

Paul B. Taylor
United States Attorney Office
U. S. Courthouse, Room 233
100 Otis Street
Asheville, NC 28801
paul.taylor@usdoj.gov

*Attorneys for the United States of America*

K. D. Sturgis
North Carolina Attorney General's Office
114 W. Edenton Street
Raleigh, NC 27603
ksturgis@ncdoj.gov

*Attorneys for Plaintiff*

                                      /s/ James P. Cooney
                                      James P. Cooney III