UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA and the
STATE OF NORTH CAROLINA,

                          Plaintiffs,

                  v.

THE CHARLOTTE-MECKLENBURG
HOSPITAL AUTHORITY, d/b/a
CAROLINAS HEALTHCARE SYSTEM,

                          Defendant.

Case No. 3:16-cv-00311-RJC-DCK

## RESPONSE OF PLAINTIFF UNITED STATES
## TO PUBLIC COMMENT ON THE PROPOSED FINAL JUDGMENT

As required by the Antitrust Procedures and Penalties Act (the "APPA" or "Tunney Act"), 15 U.S.C. §§ 16(b)–(h), the United States hereby responds to the one public comment received by the United States about the proposed Final Judgment in this case. After careful consideration of the comment submitted, the United States continues to believe that the proposed remedy will address the harm alleged in the Complaint and is therefore in the public interest. The proposed Final Judgment will prevent Atrium from impeding insurers' steered plans and transparency initiatives and restore competition among healthcare providers in the Charlotte area. The United States will move the Court for entry of a modified proposed Final Judgment[1] after

---

[1] During the December 13, 2018 hearing in this matter, the Court raised concerns regarding certain aspects of Paragraph IX(B) of the proposed Final Judgment. The United States and Atrium have agreed to modify the proposed Final Judgment to address the Court's concerns. The modifications do not alter the structure or substance of the remedy and will not materially affect Atrium's obligations and therefore do not require an additional notice and comment period under the Tunney Act, 15 U.S.C. § 16. The United States will describe in detail the parties' agreed-

this response and the public comment have been published in the *Federal Register*, pursuant to 15 U.S.C. § 16(d).

## I. Procedural History

On June 9, 2016, the United States and the State of North Carolina filed a civil antitrust lawsuit against The Charlotte-Mecklenburg Hospital Authority, formerly known as Carolinas HealthCare System and now doing business as Atrium Health ("Atrium"), to enjoin it from using steering restrictions in its agreements with health insurers in the Charlotte, North Carolina area. The Complaint alleges that Atrium's steering restrictions are anticompetitive and violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

After over two years of litigation, on November 15, 2018, the United States filed a proposed Final Judgment and a Stipulation signed by the parties that consents to entry of the proposed Final Judgment after compliance with the requirements of the Tunney Act. (Dkt. No. 87-1.) On December 4, 2018, the United States filed a Competitive Impact Statement describing the proposed Final Judgment. (Dkt. No. 89.) The United States caused the Complaint, the proposed Final Judgment, and the Competitive Impact Statement to be published in the *Federal Register* on December 11, 2018, *see* 83 Fed. Reg. 63,674, and caused notice regarding the same, together with directions for the submission of written comments relating to the proposed Final Judgment, to be published in *The Charlotte Observer* and *The Washington Post* for seven days beginning on December 7, 2018, and ending on December 13, 2018. The 60-day period for public comment ended on February 11, 2019. The United States received only one comment, which is described below in Section IV, and attached as Exhibit A hereto.

---

upon modifications and discuss how those modifications address the Court's concerns regarding Paragraph IX(B) in its forthcoming motion for entry of the modified proposed Final Judgment.

## II. Standard of Judicial Review

The Clayton Act, as amended by the APPA, requires that proposed consent judgments in antitrust cases brought by the United States be subject to a 60-day comment period, after which the court shall determine whether entry of the proposed Final Judgment "is in the public interest." 15 U.S.C. § 16(e)(1). In making that determination, the court, in accordance with the statute as amended in 2004, is required to consider:

> (A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
>
> (B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A) & (B). In considering these statutory factors, the court's inquiry is necessarily a limited one as the government is entitled to "broad discretion to settle with the defendant within the reaches of the public interest." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *see generally United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1 (D.D.C. 2007) (assessing public-interest standard under the Tunney Act); *United States v. Charleston Area Med. Ctr.,* No. 2:16-3664, 2016 WL 6156172, at *2 (S.D. W. Va. Oct. 21, 2016) (noting that in evaluating whether the proposed final judgment is in the public interest, the inquiry is "a narrow one" and only requires the court to determine if the remedy effectively addresses the harm identified in the complaint); *United States v. U.S. Airways Grp., Inc.*, 38 F. Supp. 3d 69, 75 (D.D.C. 2014) (explaining that the "court's inquiry is limited" in Tunney Act settlements); *United States v. InBev N.V./S.A.*, No. 08-1965 (JR), 2009 U.S. Dist. LEXIS 84787,

at *3 (D.D.C. Aug. 11, 2009) (noting that the court's review of a consent judgment is limited and only inquires "into whether the government's determination that the proposed remedies will cure the antitrust violations alleged in the complaint was reasonable, and whether the mechanisms to enforce the final judgment are clear and manageable").

As the United States Court of Appeals for the District of Columbia Circuit has held, under the APPA a court considers, among other things, the relationship between the remedy secured and the specific allegations in the government's complaint, whether the decree is sufficiently clear, whether its enforcement mechanisms are sufficient, and whether the decree may positively harm third parties. *See Microsoft*, 56 F.3d at 1458-62. With respect to the adequacy of the relief secured by the decree, a court may not "engage in an unrestricted evaluation of what relief would best serve the public." *United States v. BNS, Inc.*, 858 F.2d 456, 462 (9th Cir. 1988) (quoting *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981)); *see also Microsoft*, 56 F.3d at 1460–62; *United States v. Alcoa, Inc.*, 152 F. Supp. 2d 37, 40 (D.D.C. 2001); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *3. Instead:

> [t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General. The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree. The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is "*within the reaches of the public interest*." More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.[2]

*Bechtel*, 648 F.2d at 666 (emphasis added) (citations omitted).

In determining whether a proposed settlement is in the public interest, a district court

---

[2] *See also BNS*, 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA] is limited to approving or disapproving the consent decree"); *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975) (noting that, in this way, the court is constrained to "look at the overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass").

4

"must accord deference to the government's predictions about the efficacy of its remedies, and may not require that the remedies perfectly match the alleged violations." *SBC Commc'ns*, 489 F. Supp. 2d at 17; *see also U.S. Airways*, 38 F. Supp. 3d at 74-75 (noting that a court should not reject the proposed remedies because it believes others are preferable and that room must be made for the government to grant concessions in the negotiation process for settlements); *Microsoft*, 56 F.3d at 1461 (noting the need for courts to be "deferential to the government's predictions as to the effect of the proposed remedies"); *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the court should grant "due respect to the government's prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case"). The ultimate question is whether "the remedies [obtained in the decree are] so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest.'" *Microsoft*, 56 F.3d at 1461 (*quoting United States v. Western Elec. Co.*, 900 F.2d 283, 309 (D.C. Cir. 1990)). To meet this standard, the United States "need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." *SBC Commc'ns*, 489 F. Supp. 2d at 17.

Moreover, the court's role under the APPA is limited to reviewing the remedy in relationship to the violations that the United States has alleged in its complaint, and does not authorize the court to "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft*, 56 F.3d at 1459; *see also U.S. Airways*, 38 F. Supp. 3d at 75 (noting that the court must simply determine whether there is a factual foundation for the government's decisions such that its conclusions regarding the proposed settlements are reasonable); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *20 ("the 'public interest' is not to be measured by comparing the violations alleged in the complaint against those the court believes could have, or even

should have, been alleged"). Because the "court's authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first place," it follows that "the court is only authorized to review the decree itself," and not to "effectively redraft the complaint" to inquire into other matters that the United States did not pursue. *Microsoft*, 56 F.3d at 1459-60.

In its 2004 amendments to the APPA[3], Congress made clear its intent to preserve the practical benefits of utilizing consent decrees in antitrust enforcement, adding the unambiguous instruction that "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene." 15 U.S.C. § 16(e)(2); *see also U.S. Airways*, 38 F. Supp. 3d at 76 (indicating that a court is not required to hold an evidentiary hearing or to permit intervenors as part of its review under the Tunney Act). This language explicitly wrote into the statute what Congress intended when it first enacted the Tunney Act in 1974. As Senator Tunney explained: "[t]he court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process." 119 Cong. Rec. 24,598 (1973) (statement of Sen. Tunney). Rather, the procedure for the public-interest determination is left to the discretion of the court, with the recognition that the court's "scope of review remains sharply proscribed by precedent and the nature of Tunney Act proceedings." *SBC Commc'ns*, 489 F. Supp. 2d at 11. A court can make its public-interest determination based on the

---

[3] The 2004 amendments substituted "shall" for "may" in directing relevant factors for a court to consider and amended the list of factors to focus on competitive considerations and to address potentially ambiguous judgment terms. *Compare* 15 U.S.C. § 16(e) (2004), *with* 15 U.S.C. § 16(e)(1) (2006); *see also SBC Commc'ns*, 489 F. Supp. 2d at 11 (concluding that the 2004 amendments "effected minimal changes" to Tunney Act review).

competitive impact statement and response to public comments alone. *U.S. Airways*, 38 F. Supp. 3d at 76; *see also United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000) (noting that the "Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone"); S. Rep. No. 93-298 93d Cong., 1st Sess., at 6 (1973) ("Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, that is the approach that should be utilized.").

**III.     The Investigation, the Harm Alleged in the Complaint, and the Proposed Final Judgment**

The proposed Final Judgment is the culmination of a thorough, comprehensive investigation conducted by the Antitrust Division of the U.S. Department of Justice and the North Carolina Department of Justice and over two years of litigation regarding Atrium's use of steering restrictions in its contracts with health insurers in the Charlotte, North Carolina area. These steering restrictions either expressly prohibited the insurers from steering their members away from Atrium or impeded steering through other means, such as by imposing a financial penalty on any steering by the insurer away from Atrium or by allowing Atrium to promptly terminate the insurer's contract if the insurer steered members away from Atrium. Based on the evidence gathered during the investigation and litigation, the United States concluded that Atrium's steering restrictions were anticompetitive and violated Section 1 of the Sherman Act, 15 U.S.C. § 1, because the restrictions had detrimental effects on competition among healthcare providers in the Charlotte area. Specifically, the United States concluded that Atrium, in order to protect its dominant share and high prices and to insulate itself from competition, used its market power to require every major insurer in the Charlotte area to accept contract terms that restrict the insurers from steering their members to Atrium's lower-cost competitors. Atrium's steering restrictions reduced hospital competition in the Charlotte area; prevented transparency in the

communication of price, cost, quality, or patient experience information to a member; and prevented consumers from benefitting from lower prices. The proposed Final Judgment provides an effective and appropriate remedy for this competitive harm by enjoining Atrium from (1) enforcing provisions in its current insurer contracts that restrict steering and transparency; (2) seeking or obtaining contract provisions with an insurer that would prohibit, prevent, or penalize the insurer from using popular steering methods or providing transparency; and (3) penalizing, or threatening to penalize, any insurer for its use of these popular steering methods and transparency.

The proposed Final Judgment has several components, which Atrium agreed to abide by during the pendency of the Tunney Act proceedings and which the Court ordered in the Stipulation and Order of December 14, 2018 (Dkt. No. 92).

First, the proposed Final Judgment eliminates the anti-steering language in Atrium's agreements with health insurers. The proposed Final Judgment voids contract provisions (listed in Exhibit A to the proposed Final Judgment) that expressly prevent steering. The proposed Final Judgment also prohibits Atrium from using certain contract provisions that would require an insurer to include Atrium in all of its benefit plans (listed in Exhibit B to the proposed Final Judgment) to prevent, prohibit, or penalize steered plans and transparency. Finally, the proposed Final Judgment prevents Atrium from enforcing a "material impact" provision in its contract with Blue Cross and Blue Shield of North Carolina ("BCBS-NC") in a manner that reduces BCBS-NC's incentives to steer to more efficient providers.

Second, the proposed Final Judgment prevents Atrium from seeking or obtaining new contract provisions that would prohibit, prevent, or penalize steering through steered plans or transparency in the Charlotte area. The proposed Final Judgment prohibits Atrium from: (1)

expressly prohibiting steered plans or transparency; (2) requiring prior approval of new benefit plans; or (3) demanding to be included in the most-preferred tier of benefit plans regardless of price.

Third, the proposed Final Judgment prohibits Atrium from seeking or obtaining any contract provision, or taking any other action, that would penalize an insurer for steering away from Atrium through steered plans or transparency.

Finally, the proposed Final Judgment includes robust mechanisms that will allow the United States and the Court to monitor the effectiveness of the relief and to enforce compliance.

- The proposed Final Judgment requires Atrium to provide certain health insurers with a copy of the Final Judgment and notify those insurers in writing of the Court's entry of the proposed Final Judgment and its requirements. Atrium is also required to provide a copy of the proposed Final Judgment to each of its commissioners and officers as well as each employee who has responsibility for negotiating or approving contracts with insurers.

- The proposed Final Judgment also requires Atrium to develop and implement procedures necessary to ensure compliance with the proposed Final Judgment, including procedures to answer questions from Atrium's commissioners and employees about abiding by the terms of the proposed Final Judgment. Atrium must submit to the United States and the State of North Carolina a written report setting forth its actions to comply with the proposed Final Judgment and a copy of any new or revised agreement or amendment to any agreement with any insurer that is executed during the term of the proposed Final Judgment. Atrium must also notify the United States and the State of North Carolina of when a provider which Atrium controls has a contract with any insurer with a provision that prohibits, prevents, or penalizes transparency or any steered plan.

9

- The proposed Final Judgment provides the United States with the ability to investigate Atrium's compliance with the Final Judgment and enforce the provisions of the proposed Final Judgment, including its rights to seek an order of contempt from this Court.

**IV.    Summary of Public Comments and the United States' Response**

The United States received only one comment concerning the proposed Final Judgment. The comment was submitted by the North Carolina State Health Plan for Teachers and State Employees[4] and the State Treasurer of North Carolina, Dale R. Folwell (collectively, the "State Health Plan"). Importantly, the State Health Plan agrees with the purpose of the proposed Final Judgment and does not criticize the central components of the relief obtained by the United States. Rather, the State Health Plan suggests limited changes to the proposed Final Judgment relating to (1) the monitoring of Atrium's compliance with the proposed Final Judgment, (2) the extent of price transparency that the proposed Final Judgment requires of Atrium, and (3) the possible preclusion of monetary relief and penalties. As explained below, however, the proposed Final Judgment provides strong mechanisms for monitoring Atrium's conduct and ensuring its compliance with the proposed Final Judgment, allows effective transparency that patients can use to compare quality and out-of-pocket costs, and does not preclude the State Health Plan or any other party from pursuing an action to recover monetary damages or other relief against Atrium.

Although the State Health Plan contends that the compliance mechanisms in the proposed Final Judgment are insufficient and recommends an independent auditor, the proposed Final

---

[4] The State Health Plan is a Division of the North Carolina Department of State Treasurer. The Treasurer and the State Health Plan's Executive Administrator and Board of Trustees are responsible for administering the plan. *See* Exhibit A at p. 1.

Judgment provides strong mechanisms to monitor Atrium and ensure its compliance with the judgment. Paragraph VI of the proposed Final Judgment requires Atrium to provide a copy of the Final Judgment to all of the major insurers in the Charlotte area and to notify those insurers that (1) the Final Judgment prohibits Atrium from entering into or enforcing any agreement provision that violates the Final Judgment and (2) Atrium may not enforce the steering restrictions in its current contracts with those insurers. Those insurers will have ample incentive to alert the United States and North Carolina should Atrium take any action that may be deemed a violation of the Final Judgment. Paragraph VII of the proposed Final Judgment requires Atrium to (1) provide a copy of the Final Judgment to each of its commissioners, officers, and employees responsible for negotiating or approving contracts with health insurers; (2) develop and implement procedures to ensure compliance with the Final Judgment; (3) submit to the United States and North Carolina a written report setting forth all actions taken by Atrium to comply with the Final Judgment, including a description of the status of all contract negotiations between Atrium and insurers relating to healthcare services rendered in the Charlotte area; and (4) provide to the United States and North Carolina a copy of each contract or contract amendment with insurers that covers healthcare services in the Charlotte area within 30 days of execution. Further, Paragraph VII(B) provides that during the term of the Final Judgment, the United States and North Carolina may demand access to Atrium's books and records; interview Atrium's officers, employees, or agents; and require Atrium to submit written reports or responses to interrogatories on matters related to the Final Judgment.

The State Health Plan also recommends that Atrium be required to (1) begin implementation of procedures to comply with the Final Judgment as soon as possible, rather than

the 60 days specified in Paragraph VII(A)(3) of the proposed Final Judgment[5] and (2) submit its plan to comply with the Final Judgment in 90 days, rather than the 270 days specified in Paragraph VII(C) of the proposed Final Judgment.[6] In the Division's experience, however, the deadlines provided for in the proposed Final Judgment are reasonable to ensure compliance.[7] Given Atrium's size, and the time and effort that will be required to develop and approve a compliance plan that will be applicable throughout a large and diverse health system, 60 days is a reasonable period for developing such a plan. Further, allowing Atrium an additional 210 days to submit a written report will provide Atrium time to describe the status of its negotiations with insurers as required by Paragraph VII(C). Finally, this timing does not postpone Atrium's obligations to abide by the Final Judgment. In the Joint Stipulation that the parties filed with the

---

[5] Paragraph VII(A)(3) provides:

> It shall be the responsibility of the Defendant's designated counsel to undertake the following: ... within sixty (60) calendar days of entry of this Final Judgment, develop and implement procedures necessary to ensure Defendant's compliance with the Final Judgment. Such procedures shall ensure that questions from any of Defendant's commissioners, officers, or employees about this Final Judgment can be answered by counsel (which may be outside counsel) as the need arises. Paragraph 21.1. of the Amended Protective Order Regarding Confidentiality shall not be interpreted to prohibit outside counsel from answering such questions.

[6] Paragraph VII(C) provides:

> Within 270 calendar days of entry of this Final Judgment, Defendant must submit to the United States and the State of North Carolina a written report setting forth its actions to comply with this Final Judgment, specifically describing (1) the status of all negotiations between Managed Health Resources (or any successor organization) and an Insurer relating to contracts that cover Healthcare Services rendered in the Charlotte Area since the entry of the Final Judgment, and (2) the compliance procedures adopted under Paragraph VII(A)(3) of this Final Judgment.

[7] *See United States v. United Reg'l Healthcare Sys.*, No. 7:11-cv-0030-O (N.D. Tex. Sept. 29, 2011) (entering Final Judgment enjoining hospital from entering into contracts with insurers that prevent insurers from contracting with hospital's competitors and providing hospital 60 days to implement compliance procedures and 270 days to submit written report regarding compliance) *available at* https://www.justice.gov/atr/case-document/file/514136/download.

Court on November 15, 2018, Atrium agreed to abide by the terms of the proposed Final Judgment during the pendency of the Tunney Act process. *See* Joint Stipulation (Dkt. No. 87), at ¶ 3. The Court entered the Joint Stipulation as an order of the Court on December 14, 2018. *See* Stipulation and Order, dated December 14, 2018 (Dkt. No. 92), at ¶ 3. Thus, consumers are already receiving the benefits of the proposed Final Judgment.

Concerning pricing transparency, the United States agrees with the State Health Plan that price information enables consumers to make informed healthcare decisions. The proposed Final Judgment enables insurers to make pricing and quality information transparent to their members and to employers. Specifically, the proposed Final Judgment prohibits Atrium from implementing contract provisions or actions that restrict health insurers' ability to provide their members with information about the price, quality, patient experience, and anticipated out-of-pocket costs of Atrium's healthcare services compared to Atrium's competitors. This information will help insurers to make steered plans more effective by providing consumers with information that enables them to choose more cost-effective, high-quality providers, thereby encouraging competition among healthcare providers.

The State Health Plan, however, incorrectly argues that the Final Judgment should not allow Atrium to place any limitations on health insurers' ability to disseminate Atrium's prices.[8]

---

[8] Paragraph V(C) of the proposed Final Judgment provides:

> [F]or an Insurer's dissemination of price or cost information (other than communication of an individual consumer's or member's actual or estimated out-of-pocket expense), nothing in the Final Judgment will prevent or impair Defendant from enforcing current or future provisions, including but not limited to confidentiality provisions, that (i) prohibit an Insurer from disseminating price or cost information to Defendant's competitors, other Insurers, or the general public; and/or (ii) require an Insurer to obtain a covenant from any third party that receives such price or cost information that such third party will not disclose that information to Defendant's competitors, another Insurer, the general public, or

13

Limitless sharing of pricing information, which contains competitively sensitive negotiated pricing, is not needed to redress the harm alleged in this case. Allowing insurers to provide information about price and quality to their members and their employers is sufficient to facilitate steering. Indeed, the proposed Final Judgment enables insurers to disclose to enrollees insurer-calculated estimates of their out-of-pocket costs at alternative providers, which accounts for negotiated provider prices and enrollees' insurance coverage. This information gives consumers the ability to make informed healthcare decisions. For this reason, the proposed Final Judgment does not need to require Atrium to disclose competitively sensitive price information to Atrium's competitors and the general public.

Finally, the State Health Plan expresses concern that the proposed Final Judgment may preclude the State Health Plan from pursuing an action for damages against Atrium. As stated in the Competitive Impact Statement, Section 4 of the Clayton Act, 15 U.S.C. § 15, however, provides that any person who has been injured as a result of conduct prohibited by the antitrust laws may bring suit in federal court to recover three times the damages the person has suffered, as well as costs and reasonable attorneys' fees. Entry of the proposed Final Judgment will neither impair nor assist any private antitrust damage action. Therefore, the State Health Plan remains free to pursue an action for monetary damages or other remedies.

## V.  Conclusion

After careful consideration of the State Health Plan's comment, the United States continues to believe that the proposed Final Judgment provides an effective and appropriate remedy for the antitrust violations alleged in the Complaint and is therefore in the public interest.

---

any other third party lacking a reasonable need to obtain such competitively sensitive information.

The United States will move this Court to enter the modified proposed Final Judgment after the comment and this response are published as required by 15 U.S.C. § 16(d).

Respectfully submitted,

Dated: April 1, 2019

FOR PLAINTIFF
UNITED STATES OF AMERICA:


 /s/ Catherine R. Reilly
Catherine R. Reilly
Karl D. Knutsen
Antitrust Division
U.S. Department of Justice
450 Fifth Street, NW, Suite 4100
Washington, D.C. 20530
(p) 202/598-2744
Catherine.Reilly@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing to be served via electronic mail to the following:

K.D. Sturgis
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
(p) 919/716.6011
ksturgis@ncdoj.gov

Counsel for Plaintiff State of North Carolina

James P. Cooney III
Sarah Stone
Debbie W. Harden
Mark J. Horoschak
Brian Hayles
Michael Fischer
WOMBLE BOND DICKINSON (US) LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202
(p) 704/331.4900
Jim.Cooney@wbd-us.com
Sarah.Stone@wbd-us.com
Debbie.Harden@wbd-us.com
Mark.Horoschak@wbd-us.com
Brian.Hayles@wbd-us.com
Michael.Fischer@wbd-us.com

Richard A. Feinstein
Nicholas A. Widnell
Hampton Dellinger
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
(p) 202/274.1152
rfeinstein@bsfllp.com
hdellinger@bsfllp.com
nwidnell@bsfllp.com

Counsel for the Defendant

Dated: April 1, 2019

       /s/ Catherine R. Reilly
      Catherine R. Reilly